UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

DARREN FRANKLIN,

       Petitioner,

v.                     Case No: 5:12-cv-215-Oc-29PRL

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS
and FLORIDA ATTORNEY
GENERAL,

       Respondents.[1]

---

**OPINION AND ORDER**

This matter comes before the Court upon a petition for habeas corpus relief filed pursuant to 28 U.S.C. § 2254 by Darren Franklin ("Petitioner") who is presently confined at the Blackwater River Correctional Facility in Milton, Florida (Doc. 1). Petitioner, proceeding *pro* se, attacks the convictions and sentences entered by the Fifth Judicial Circuit Court in Marion County, Florida, for three counts of robbery with a firearm and one count of aggravated

---

[1] The Supreme Court has made clear that there "is generally only one proper respondent to a given prisoner's habeas petition." Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004). This is "the person with the ability to produce the prisoner's body before the habeas court." Id. at 435–36. When the petitioner is incarcerated and challenges his present physical confinement "the proper respondent is the warden of the facility where the prisoner is being held, not the attorney general or some other remote supervisory official." Id. at 436 (citations omitted). In Florida, the proper respondent in this action is the Secretary of the Florida Department of Corrections. Therefore, the Florida Attorney General will be dismissed from this action.

assault with a firearm.  Id.  Respondent filed a response to the petition, and Petitioner filed a reply to the response (Doc. 8; Doc. 10).

Petitioner raises four claims in his petition.  He asserts that: (1) counsel was ineffective for failing to sever his three robbery charges; (2) counsel was ineffective for failing to investigate an exculpatory witness; (3) counsel failed to move for a mistrial when a crime scene investigator testified that she gave fingerprint lifts to another individual for interpretation; and (4) counsel misadvised Petitioner that evidence of other robberies would be admissible if he severed the counts (Doc. 1 at 9-15).

Upon due consideration of the petition, the response, the reply, and the state court record, the Court concludes that the petition must be denied.  Because the Court may resolve the Petition on the basis of the record, an evidentiary hearing is not warranted.  See Rule 8, Rules Governing Habeas Corpus Petitions under Section 2254.

## I.  Background and Procedural History

On January 26, 2009, Petitioner was charged by amended information with one count of attempted first degree murder with a firearm (count one), and three counts of robbery with a firearm (counts two through four) (Ex. A).[2]  After a jury trial,

---

[2] The volumes and exhibits referenced in this case refer to those filed on October 15, 2012 (Doc. 9).  References to the trial transcript, located in Exhibit B, are cited as (T. at ___).

Petitioner was found guilty of the lesser included offense of aggravated assault with possession and discharge of a firearm on count one and guilty as charged on counts two, three, and four (Ex. C). Petitioner was sentenced to concurrent twenty-year prison terms on counts one and two and to ten-year terms on counts three and four, to be served consecutively to the terms in counts one and two and consecutively to each other (Ex. D). Petitioner's convictions and sentences were *per curiam* affirmed by Florida's Fifth District Court of Appeal (Ex. E); <u>Franklin v. State</u>, 20 So. 3d 861 (Fla. 5th DCA 2009).

Petitioner filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure in which he raised six claims of ineffective assistance of counsel ("Rule 3.850 motion"). An evidentiary hearing was held on the Rule 3.850 motion at which Petitioner and his trial counsel testified (Ex. M). After the hearing, the post-conviction court denied the Rule 3.850 motion (Ex. N). On September 20, 2011, Florida's Fifth District Court of Appeal *per curiam* affirmed (Ex. R); <u>Franklin v. State</u>, 70 So. 3d 601 (Fla. 5th DCA 2011).

Petitioner filed the instant habeas petition on April 30, 2012 (Doc. 1). Respondent agrees that the petition was timely filed (Doc. 8 at 8).

---

References to the evidentiary hearing, located in Exhibit M, are cited as (E.H. at __).

## II.  __Governing Legal Principles__

### A.  __Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")__

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  This standard is both mandatory and difficult to meet.  White v. Woodall, 134 S. Ct. 1697, 1702 (2014).  A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference.  Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision.  White, 134 S. Ct. at 1702; Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)).  A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law;

or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts.  Ward v. Hall, 592 F.3d 1144, 1155 (11th Cir. 2010); Mitchell v. Esparza, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, Brown v. Payton, 544 U.S. 133, 134 (2005); Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply."  Bottoson, 234 F.3d at 531 (quoting Williams, 529 U.S. at 406).  The unreasonable application inquiry "requires the state court decision to be more than incorrect or erroneous," rather, it must be "objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75-77 (2003) (citation omitted); Mitchell, 540 U.S. at 17-18; Ward, 592 F.3d at 1155.  Petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  White, 134 S. Ct. at 1702 (quoting Harrington v. Richter, 562 U.S. 86, 131 S. Ct. 770, 786-787 (2011)).

Finally, the Supreme Court has stated that "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding[.]" Miller-El v. Cockrell, 537 U.S. 322, 340 (2003) (dictum). When reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see, e.g., Burt v. Titlow, 134 S. Ct. 10, 15-16 (2013); Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").

**B.  Standard for Ineffective Assistance of Counsel**

In Strickland v. Washington, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. 466 U.S. 668, 687-88 (1984). A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. Id. This is a

"doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt. Burt, 134 S. Ct. at 13, citing Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011).

The focus of inquiry under Strickland's performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688-89.   In reviewing counsel's performance, a court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.   Indeed, the petitioner bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable[.]" Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006).   A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a "highly deferential" level of judicial scrutiny. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690).

As to the prejudice prong of the Strickland standard, Petitioner's burden to demonstrate prejudice is high. Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002).   Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687.   That is, "[t]he

defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. At 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

   **C.   Exhaustion and Procedural Default**

   The AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has exhausted all means of available relief under state law. Specifically, the AEDPA provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
>    (A) the applicant has exhausted the remedies available in the courts of the State; or
>
>    (B)
>       (i)      there is an absence of available State corrective process; or
>
>       (ii)     circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1) (2012).

   Exhaustion of state remedies requires that the state prisoner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]" Duncan v. Henry, 513 U.S. 364, 365 (1995) (citing Picard v. Conner, 404 U.S. 270,

275-76 (1971)).   The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim.   <u>Snowden v. Singletary</u>, 135 F.3d 732 (11th Cir. 1998).   In addition, a federal habeas court is precluded from considering claims that are not exhausted but would clearly be barred if returned to state court.   <u>Coleman v. Thompson</u>, 501 U.S. 722, 735 n.1 (1991) (if a petitioner has failed to exhaust state remedies and the state court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims).   Finally, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law.   <u>Coleman</u>, 501 U.S. at 750.   If a petitioner attempts to raise a claim in a manner not permitted by state procedural rules, he is barred from pursuing the same claim in federal court.   <u>Alderman v. Zant</u>, 22 F.3d 1541, 1549 (11th Cir. 1994).

Procedural default will be excused only in two narrow circumstances.   First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default.   "To

establish cause for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." Wright v. Hopper, 169 F.3d 695, 703 (11th Cir. 1999) (internal quotation marks omitted). To establish prejudice, a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003).

The second exception, known as the fundamental miscarriage of justice, only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent[.]" Murray v. Carrier, 477 U.S. 478, 479-80 (1986). Actual innocence means factual innocence, not legal insufficiency. Bousley v. United States, 523 U.S. 614, 623 (1998). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. Schlup v. Delo, 513 U.S. 298, 327 (1995). In addition, "[t]o be credible, a claim of actual innocence must be based on [new] reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324).

III. **Analysis**

    A.    **Claim One**

Petitioner asserts that trial counsel was ineffective for failing to file a motion to sever the robbery charges in counts two through four (Doc. 1 at 9). Specifically, Petitioner asserts that "the facts giving rise to the [robbery] charges involve[d] three separate alleged hotel robberies" and that each robbery occurred at different times on different dates and involved different victims. Id. Petitioner asserts that he suffered prejudice from counsel's failure to sever the claims because of "the cumulative effect of repetitious identifications at trial." Id. at 10.

Petitioner raised this claim in his Rule 3.850 motion, and after an evidentiary hearing, the post-conviction court denied the claim:

> In this claim the defendant argues that the charges he was convicted of involved events that occurred on different dates, at different locations, involved different victims, and were independent of each other. The events forming the basis of counts one and two occurred on September 15, 2007, at a Quality Inn hotel. The remaining counts are based upon events that occurred at a Best Western on September 22, 2007, and a Ramada Inn on September 23, 2007.
>
> The defendant alleges in his motion on page 4, that his trial counsel, Jerry Burford, "stated that it would be a 'good idea' to have the charges severed and for separate trials to occur, and went on to advise the defendant

- 11 -

that he would seek to do so.  This never transpired."

At the evidentiary hearing, Mr. Burford testified that he and the defendant "had a lengthy discussion about severance."  Mr. Burford testified he never said it would be a good idea to sever the charges, and the he and the defendant came to the conclusion, "a tactical decision, that severance was not in [their] best interest."  Mr. Burford further testified that he explained <u>Williams</u> Rule evidence to the defendant, and explained that even if the charges were severed (which Mr. Burford opined that they would not have been, and explains why in his testimony), evidence of all of the robberies would have been admissible in separate trials under the <u>Williams</u> Rule because "they were almost identical in terms of how they occurred."

Because not all of the cases were of equal strength in terms of evidence against the defendant, it was their strategical decision to try them together in order to use the weaknesses of lessor cases to undermine the strength of the other cases.  Mr. Burford testified that strategy was a tactic agreed to by the defendant.

The testimony of the defendant and that of Mr. Burford are in direct conflict on the issue of a motion to sever the counts.  The court finds the testimony of Mr. Burford to be more credible than the testimony of the defendant.

The court further finds that Mr. Burford's strategy was reasonable under the norms of professional conduct, and that under the facts of this case, a motion to sever would have been properly denied.

(Ex. N at 82).  The post-conviction court's adjudication of this claim was affirmed by the Fifth District Court of Appeal (Ex. E);

<u>Franklin</u>, 20 So. 3d at 861.   A review of the record supports the state courts' denial of this claim.

In his Rule 3.850 motion, Petitioner asserted that counsel had told him that it would be a "good idea" to sever Petitioner's robbery counts, but that counsel never attempted to do so (Ex. L at 8).   At the evidentiary hearing on this issue, Petitioner re-asserted that counsel had told him that he would file a motion to have the charges severed, but counsel never filed such a motion (E.H. at 3).   In contrast to Petitioner's testimony, defense counsel Jerry Burford ("Burford") testified at the evidentiary hearing that he had a lengthy discussion with Petitioner about severance and that he never told Petitioner that he thought severance would be a good idea. <u>Id.</u> at 18.   Rather, Burford testified that he told Petitioner that severance was *not* a good idea because the state would likely try to bring in <u>Williams</u>[3] Rule evidence of the other robberies.   Burford also testified that it was his opinion that the robbery charges would not have been

---

[3] <u>Williams v. State</u>, 110 So. 2d 654 (Fla. 1959) (relevant evidence of collateral crimes is admissible at a jury trial when it does not go to prove the "bad character" or "criminal propensity" of the defendant, but is used to show motive, intent, knowledge, *modus operandi*, or lack of mistake).   The rule is codified in Florida Statute § 90.404(2)(a) ("Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.").

severed, even had he requested it, because the robberies "would be classified as a classic crime spree incident and case law says that that is not – if there is a crime spree that severance should not be granted." Id. at 19. Counsel testified that one of the cases against Petitioner was weak and "if the police made a mistake in arresting [Petitioner] on the weak case, we could use that to undermine their arrest of him on the stronger cases." Id. at 20. Burford testified that Petitioner agreed to this tactic. Id.

The post-conviction court recognized that Petitioner's testimony was in direct conflict with Burford's testimony, but found Burford's testimony to be more credible (Ex. N at 82). Questions of the credibility and demeanor of a witness are questions of fact. Freund v. Butterworth, 165 F.3d 839, 862 (11th Cir. 1999). The AEDPA affords a presumption of correctness to a factual determination made by a state court, and the habeas petitioner has the burden of overcoming the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e). Moreover, determining the credibility of a witness, "is the province and function of the state courts, not a federal court engaging in habeas review." Consalvo v. Sec'y for Dep't of Corr., 664 F.3d 842, 845 (11th Cir. 2011); see also Gore v. Sec'y for Dep't of Corr., 492 F.3d 1273, 1300 (11th Cir. 2007) (recognizing that while reviewing court also gives a certain amount of deference to credibility determinations, that deference is heightened on

habeas review) (citing <u>Rice v. Collins</u>, 546 U.S. 333, 341–42 (2006) ("[r]easonable minds reviewing the record might disagree about the [witness'] credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination")). Federal habeas courts have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." <u>Marshall v. Lonberger</u>, 459 U.S. 422, 434 (1983).

Petitioner has not shown by clear and convincing evidence that the state court's determination that Burford was a more credible witness than Petitioner was unreasonable.  Therefore, the post-conviction court reasonably concluded that Burford, with Petitioner's approval, made a strategic decision to try Petitioner's robbery counts together in an attempt to emphasize the state's weakness in two of the robbery cases.  It is well settled that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." <u>Strickland</u>, 466 U.S. at 690-91.  Under the circumstances, Burford's choices, and his investigation, fell well within "the wide range of professionally competent assistance." <u>Id.</u> at 690.  Petitioner has not satisfied the first prong of

Strickland, and he is not entitled to federal habeas relief on Claim One. 28 U.S.C. § 2254(d); Strickland, 466 U.S. at 697 (Because the petitioner bears the burden of satisfying both prongs of the test, the Court need not "address both components of the inquiry if the [petitioner] makes an insufficient showing on one.").

**B.   Claim Two**

Petitioner asserts that counsel was ineffective because he failed to investigate an alibi witness who would have provided an alibi for one of the robberies (Doc. 1 at 12). Specifically, Petitioner asserts that Shandria Henderson would have testified that Petitioner was with her at the time of the Quality Inn robbery. Id. at 13-14.

Petitioner raised this issue in his Rule 3.850 motion, and an evidentiary hearing was held on the claim (Ex. L; Ex. M). After the hearing, the post-conviction denied the claim (Ex. N at 83). The Court noted that Burford testified that when he initially met with Petitioner to discuss the charges against him, Petitioner was unable to account for his whereabouts during any of the robberies. Id. Burford also testified that Petitioner had admitted to him that he had committed the crimes and that he could not present perjured testimony at trial. Id. The post-conviction court found Burford's testimony to be more credible than that of Petitioner and denied the claim. Id.

Respondent urges that Claim Two is unexhausted because, although Petitioner raised this claim in his Rule 3.850 motion, he did not raise it in his brief on appeal. Because an evidentiary hearing was held by the post-conviction court, Respondent is correct. On appeal of the denial of his Rule 3.850 motion, Petitioner challenged the post-conviction court's ruling on only four of the six claims he raised in his Rule 3.850 motion (Ex. P). Pursuant to Rule 9.141(b)(3) of the Florida Rules of Appellate Procedure, failure to fully brief and argue points on appeal after receiving an evidentiary hearing on a Rule 3.850 motion constitutes a waiver of those claims. See, e.g., Leonard v. Wainwright, 601 F.2d 807, 808 (5th Cir. 1979)(Florida prisoner must appeal denial of Rule 3.850 relief to exhaust remedies);[4] Cortes v. Gladish, 216 F. App'x 897, 899-900 (11th Cir. 2007) (recognizing that when a petitioner receives an evidentiary hearing on his Rule 3.850 motion, his failure to address issues in his appellate brief would constitute a waiver of those claims); Coolen v. State, 696 So. 2d 738, 742 n.2 (Fla. 1997) (Failure to fully brief and argue points on appeal constitutes a waiver of these claims.); Duest v. Dugger, 555 So. 2d 849, 852 (Fla. 1990) (same).

The "one complete round" exhaustion requirement set forth in O'Sullivan v. Boerckel, 526 U.S. 838 (1999) applies to post-

---

[4] The Eleventh Circuit adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981).

conviction review as well; a prisoner must appeal the denial of post-conviction relief in order to properly exhaust state remedies. LeCroy v. Sec'y, Fla. Dep't of Corr., 421 F.3d 1237, 1261 (11th Cir. 2005) (as Florida prisoner failed to properly exhaust claim on direct appeal or Rule 3.850 appeal, it was procedurally barred, citing Coleman); Pope v. Rich, 358 F.3d 852, 854 (11th Cir. 2004) ("Boerckel applies to the state collateral review process as well as the direct appeal process"). Petitioner has shown nether cause for and actual prejudice from the default nor has he presented new and reliable evidence to demonstrate that he is actually innocent of the underlying offense. Rather, he argues only that he "strategically chose to brief other claims" in his brief on appeal and that Martinez v. Ryan, 132 S. Ct. 1309 (2012), stands for the proposition that none of his ineffective assistance claims are procedurally barred (Doc. 10 at 9-13).[5]

---

[5] In Martinez, the Supreme Court relaxed the Coleman cause-and-prejudice standard to excuse procedural default in a narrow category of cases. Specifically, the Supreme Court determined that the procedural default of "an ineffective-assistance claim" by post-conviction counsel in an initial-review state-court collateral proceeding should be excused under a more lenient standard than cause and prejudice under Coleman. Martinez, 132 S. Ct. at 1318. However, the Martinez court was careful to restrict its holding to ineffective assistance in the initial-review collateral proceeding in state court Id. at 1320. In the instant case, it is only the appeal of an initial review collateral proceeding that was defaulted. Therefore, the Martinez exception does not apply. Broadening the rule to excuse Petitioner's failure to exhaust in this case would ignore the Supreme Court's explicit statement that the Martinez rule creates only a narrow exception to Coleman's general rule. See Martinez, 132 S. Ct. at

To the extent Petitioner now argues that his lack of post-conviction counsel excuses his failure to appeal the denial of his Rule 3.850 claim, such argument is foreclosed by the Supreme Court decision in Coleman v. Thompson. 501 U.S. at 756-57 (noting that because a defendant has no right to counsel in state collateral proceedings after exhaustion of direct appellate review "it would defy logic for us to hold that [petitioner] had a right to counsel to appeal a state collateral determination of his claims of trial error."). In Coleman, appellate counsel's failure to timely file an appeal did not excuse Coleman's procedural default. Likewise, Petitioner's lack of counsel during the appeal of his Rule 3.850 motion does not excuse Petitioner's failure to exhaust this claim (Doc. 26 at 2); see also discussion *supra* note 5 (noting that Martinez applies only to initial review collateral proceedings). Petitioner has made none of the requisite showings to excuse his default, which bars federal habeas review of Claim Two. Coleman, 501 U.S. at 734-35.

Even assuming *arguendo* that Claim Two is exhausted, Petitioner is not entitled to habeas relief. At the evidentiary hearing, Burford testified that Petitioner "never gave him the

---

1315 (referring to a "narrow exception"); id. at 1320 (referring to the "limited circumstances" in which its ruling applied and discussing the "limited nature" of the rule); Trevino v. Thaler, 133 S. Ct. 1911, 1921 (2013) (applying Martinez's "narrow exception").

name of a witness that could alibi him." (E.H. at 21).  Burford also testified that Petitioner admitted that he had committed the robberies and therefore, "[e]ven had [Petitioner] given me that witness and that witness was willing to say, provide an alibi, I knew that it would be perjured and, therefore, I cannot present that to the Court, not ethically[.]" Id. at 21-22.  The post-conviction court recognized that Burford's testimony was in direct conflict with Petitioner's testimony but found Burford's testimony to be more credible (Ex. N at 83).

Petitioner has not shown by clear and convincing evidence that the state court's determination that Burford was a more credible witness than Petitioner was unreasonable.  See discussion supra Claim One.  Therefore, based upon the record, the state courts reasonably concluded that Petitioner had not informed counsel of any alibi witnesses and had confessed to him that he committed the burglaries.  Counsel could not be ineffective for failing to call a witness of whom he was unaware.  Nor was counsel ineffective for refusing to present testimony that he believed to be perjury. See Nix v. Whiteside, 475 U.S. 157, 171 (1986) ("The suggestion sometimes made that a lawyer must believe his client, not judge him in no sense means a lawyer can honorably be a party to or in any way give aid to presenting known perjury.")(internal quotation omitted).

The post-conviction court's rejection of this claim was neither contrary to federal law nor based upon an unreasonable determination of the facts.   In addition to being unexhausted, Claim Two fails on the merits.

### C.   Claim Three

Petitioner asserts that trial counsel was ineffective for failing to object and move for a mistrial when a crime scene technician for the state indicated that she gathered finger print lifts and gave them to another individual for processing (Doc. 1 at 15).   Specifically, he argues that because the individual who processed the fingerprints did not testify, he was denied his right to confront a witness who testified against him. Id.

Petitioner raised this issue in his Rule 3.850 motion, and after an evidentiary hearing, the claim was denied (Ex. N).   The post-conviction court concluded that Petitioner was attempting to raise a violation of his confrontation rights under Crawford v. Washington, 541 U.S. 36 (2004), in that someone other than the person testifying at trial examined the latent fingerprints lifted from the crime scene (Ex. N at 87).   The court noted that nobody testified at trial that any of the latent lifts collected at the scene were matched to the defendant so there simply was no Crawford issue, and counsel was not ineffective for failing to object.   Id. Petitioner appealed the post-conviction court's decision, and the Fifth District Court of Appeal per curiam affirmed (Ex. R).

A review of the record supports the post-conviction court's conclusions on this claim.   At trial, Ocala Police Department crime scene technician Heather Doucette testified that she was called to a robbery at a Ramada Inn on Northwest Blitchton Road in Ocala, Florida (T. at 195).   She testified that she took photographs and gathered evidence including a black t-shirt and shoe impressions (T. at 196).   She dusted the till area and exit door for fingerprints and found none on the till, but found "four latent prints" on the door (T. at 200-01).   She testified that she recovered the prints, but did not perform tests on the results (T. at 201).   On cross examination, Doucette testified that she did not recall whether the prints she gathered were full or partial and reiterated that she was not the person who determined whether the prints were of value (T. at 204-05).   The state did not offer any evidence that the fingerprints gathered were those of Petitioner or any other person.   In closing argument, counsel argued that the state had failed to present any evidence linking Petitioner to the Ramada Inn robbery (T. at 434-35).

At the evidentiary hearing, Burford testified that he argued in his closing that no fingerprints were found and that he believed the state presented Doucette's testimony to neutralize any argument by the defense that the state had not bothered to search for evidence that somebody else may have done the Ramada robbery (E.H. at 25).   Burford testified that there were no grounds to

exclude Doucette's testimony and also asserted that "the fact that [the state] never presented evidence that identified those prints to [Petitioner] was a positive[.]"  Id. at 25-26.

Under Crawford v. Washington, the Sixth Amendment prohibits the introduction of out-of-court testimonial statements unless the declarant is unavailable to testify and the defendant had a prior opportunity to cross-examine the declarant. 546 U.S. at 53-54, 68. The Crawford court "le[ft] for another day any effort to spell out a comprehensive definition of 'testimonial'", but stated that "[w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations."  541 U.S. at 68.

In the instant case, Petitioner has not explained how any out-of-court testimonial statement was introduced at trial or on what grounds counsel could have objected to Doucette's testimony. Counsel was free to cross-examine Doucette on whether or not she actually gathered the prints, but Doucette testified that she did not know the results, if any, of the fingerprint analysis (T. at 204-05).  There were no testimonial statements offered by Doucette regarding the results of the fingerprint analysis, and counsel was not ineffective for not objecting to Doucette's testimony. Brownlee v. Haley, 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit).

The state court's adjudication of this claim was not contrary to Strickland or Crawford and was not based upon an unreasonable determination of the facts. Claim Three is denied. 28 U.S.C. § 2254(d).

### D.   Claim Raised in Petitioner's Reply

In his reply, Petitioner attempts to raise a new claim, stating that "if this court determines that Attorney Burford's testimony at the state court evidentiary hearing that Petitioner 'agreed' to the strategy of joinder is dispositive to [Claim One], Petitioner would affirmatively allege that Attorney Bufford misadvised Petitioner concerning the admittance of the evidence under the Williams Rule, causing him to "unknowingly waive his right to severance[.]" (Doc. 10 at 10).

Petitioner's attempt to raise a new claim in a reply is not authorized by the applicable rules.  Petitioner was required to state all of his claims in his petition.  See Rule 2(c) of the Rules Governing Habeas Corpus Cases Under Section 2254 ("The petition must: (1) specify all the grounds for relief available to the petitioner[.]").  Petitioner did not raise this claim in his petition, did not seek leave to amend his petition to add this claim, and is barred from raising it in his reply.  See Herring v. Sec'y, Dep't of Corr., 397 F.3d 1338 (11th Cir. 2005) (arguments raised for the first time in a reply brief are not properly before a reviewing court); United States v. Whitesell, 314 F.3d 1251,

1256 (11th Cir. 2002) (Court need not address issue raised for first time in reply brief).   Therefore, this claim is due to be dismissed.

The Eleventh Circuit has held that a district court is required to consider claims raised in a reply if the State was "on notice" of the claim and the reply merely asserted "facts that served to clarify and expand" a prior claim. Williams v. Fla. Dep't of Corr., 391 F. App'x 806, 810-11 (11th Cir. 2010).   Even if this Court were to interpret this new claim as an attempt to "clarify and expand" Claim One and conclude that it should be addressed on the merits, Petitioner has not demonstrated that he is entitled to habeas relief.   Petitioner now asserts that he waived his "right to severance" based on faulty advice from Burford.   However, without a showing of prejudice, the reasons for Petitioner's alleged waiver are irrelevant.

In its denial of Petitioner's Rule 3.850 motion, the post-conviction court specifically stated that "a motion to sever would have been denied." (Ex. N at 82).   The post-conviction court was affirmed on direct appeal (Cite).   In order to grant any type of relief, this Court would have to now conclude that the state courts misinterpreted Florida law in concluding that a motion for severance would not have been granted.   In Herring, 397 F.3d at 1338 and Callahan v. Campbell, 427 F.3d 897 (11th Cir. 2005), the Eleventh Circuit addressed similar issues.   In those cases, the

petitioners claimed that their trial attorneys were ineffective, based on state law, for failing to object to certain evidence at trial.  Herring, 397 F.3d at 1354-55; Callahan, 427 F.3d 897, 932. On direct appeal, the state courts rejected the petitioners' claims based on state law.  Herring, 397 F.3d at 1354-55; Callahan, 427 F.3d 897, 932.  Both petitioners brought ineffective assistance claims in their federal habeas petitions, but the Eleventh Circuit rejected the claims, because granting the petitions would have required the Eleventh Circuit to conclude that the state courts misinterpreted state law.  Herring, 397 F.3d at 1354-55 ("The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done[.] . . . It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'") (quoting Agan v. Vaugh, 119 F.3d 1538, 1549 (11th Cir. 1997)); Callahan, 427 F.3d 897, 932 ("[T]he Alabama Court of Criminal Appeals has already answered the question of what would have happened had [counsel] objected to the introduction of [petitioner's] statements based on [state law] . . . . Therefore, [petitioner's counsel] was not ineffective for failing to make that objection.").

Here, as in Herring and Callahan, the post-conviction court and by its affirmance, the Fifth District Court of Appeal, answered

the question of what would have happened had Petitioner's counsel filed a motion to sever Petitioner's trial – it would not have been granted (Ex. N at 82).   Therefore, Petitioner cannot show prejudice from counsel's failure to file a motion to sever.   In addition to being dismissed as improperly raised in a reply, this claim is denied pursuant to 28 U.S.C. § 2254(d).

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV.  <u>Certificate of Appealability</u>[6]

Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate of appealability ("COA").  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282

---

[6] Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." <u>Id.</u> As this Court has determined that Petitioner is not entitled to habeas corpus relief, it must now consider whether Petitioner is entitled to a certificate of appealability.

(2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" <u>Miller-El</u>, 537 U.S. at 335-36. Petitioner has not made the requisite showing in these circumstances.

Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis.*

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1.    The Florida Attorney General is **DISMISSED** as a named Respondent.

2.    The 28 U.S.C. § 2254 petition for habeas corpus relief filed by Darren Franklin (Doc. 1) is **DENIED**, and this case is dismissed with prejudice.

3.    Petitioner is **DENIED** a certificate of appealability.

4.    The Clerk of Court is directed to terminate any pending motions, enter judgment accordingly, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on this ___9th___ day of December, 2014.

JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

SA: OrlP-4
Copies: Darren Franklin
Counsel of Record